**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**TRUSTEES OF THE LOCAL 7 TILE INDUSTRY**
**WELFARE FUND, TRUSTEES OF THE LOCAL 7**
**TILE INDUSTRY RETIREE WELFARE FUND,**
**TRUSTEES OF THE TILE LAYERS LOCAL UNION 52**
**PENSION FUND, TRUSTEES OF THE LOCAL 7 TILE**
**INDUSTRY VACATION FUND, TRUSTEES OF THE**
**LOCAL 7 TILE INDUSTRY SUPPLEMENTAL FUND,**          **REPORT AND**
**TRUSTEES OF THE LOCAL 7 TILE INDUSTRY**             **RECOMMENDATIONS**
**ANNUITY FUND, TRUSTEES OF THE LOCAL 7 TILE**
**INDUSTRY PROMOTIONAL FUND, TRUSTEES OF**            **19-CV-126 (ENV)**
**THE LOCAL 7 TILE INDUSTRY TRAINING FUND,**
**TRUSTEES OF THE LOCAL 7 TILE INDUSTRY**
**BUILDING FUND, TRUSTEES OF THE LOCAL 7**
**TILE INDUSTRY DEFENSE FUND, TRUSTEES OF**
**THE LOCAL 7 TILE INDUSTRY LOCAL POLITICAL**
**ACTION COMMITTEE, TRUSTEES OF THE BRICKLAYERS**
**& TROWEL TRADES INTERNATIONAL PENSION FUND,**
**THE INTERNATIONAL MASORNY INSTITUTE, THE**
**TRUSTEES OF THE BRICKLAYERS AND ALLIED**
**CRAFTERS POLITICAL ACTION COMMITTEE, AND**
**LOCAL UNION NO. 7 OF THE INTERNTAIONAL UNION**
**OF BRICKLAYERS AND ALLIED CRAFTWORKERS,**

                              **Plaintiffs,**

            **-against-**

**ALL FLOORING SOLUTIONS, LLC,**

                              **Defendant.**
-------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

In this action, plaintiffs – who are, *inter alia*, trustees for various employee fringe

benefit trust funds of the International Union of Bricklayers and Allied Craftworkers, Local

Union No. 7 (the "Local 7 Benefit Funds") and of the Bricklayers and Trowel Trades

International Pension Fund and the International Masonry Institute (the "International Benefit Funds")[1] -- allege that defendant All Flooring Solutions, LLC ("defendant" or "All Flooring") failed to remit contributions required pursuant to a collective bargaining agreement, in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* ("LMRA"). See generally Am. Compl. In addition, the International Union of Bricklayers and Allied Craftworkers, Local Union No. 7 (the "Union") alleges that defendant failed to make dues check-off contributions, as required by the collective bargaining agreement. See id.

Currently pending before this Court, on a referral from the Honorable Eric N. Vitaliano, is a motion for default judgment against All Flooring. See Motion for Default Judgment (Aug. 22, 2019) ("Pl. Mot."), DE #34; Order Referring Motion (Aug. 22, 2019). For the reasons explained below, the Court recommends that default judgment be entered and that $443,082.42, plus interest at a daily rate of $105.50 from April 27, 2016 until the entry of judgment, be awarded in the following amounts: (1) unpaid contributions and dues in the amount of $427,706.58, (2) statutory damages in the amount of $141.16; (3) audit fees of $3,200; (4) $11,536.35 in attorney's fees and $498.33 in costs; and (5) post-judgment interest to be calculated by the Clerk of Court.

---

[1] The Local 7 Benefit Funds consist of the Local 7 Tile Industry Welfare Fund, the Local 7 Retiree Welfare Fund, the Tile Layers Local Union 52 Pension Fund, the Local 7 Tile Industry Vacation Fund, the Local 7 Tile Industry Supplemental Fund, the Local 7 Tile Industry Annuity Fund and the Local 7 Tile Industry Training Fund. See Amended Complaint (June 18, 2019) ("Am. Compl.") ¶ 4, Electronic Case Filing ("ECF") Docket Entry ("DE") #26. The International Benefit Funds include the International Pension Fund and the International Masonry Institute ("IMI"). See id. ¶ 5.

## BACKGROUND

The Local 7 Benefit Funds and the International Benefit Funds (collectively, the "ERISA Funds") are multi-employer labor-management funds established pursuant to "various collective bargaining agreements" in accordance with Section 302(c)(5) of the Taft Hartley Act, 29 U.S.C. § 186(c)(5).  See Am. Compl. ¶¶ 4, 5.  The ERISA Funds constitute multi-employer/employee benefit plans, within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37).  See id.

In 2005, the Tile Layers Local Union 52 Insurance and Welfare Fund, the Tile Workers Union Local No. 7 Welfare Fund Employee Benefit Plan, and the Tile Finishers Local Union No. 88 New York Welfare Fund were merged to form the Local 7 Tile Industry Welfare Fund.  See Declaration of William Hill (Aug. 22, 2019) ("Hill Decl.") ¶ 5, DE #35. That same year, the Tile Workers Local Union 52 Annuity Fund, the Tile Workers Local Union 77 Annuity Fund, and the Tile Workers Local Union 88 Annuity Fund were merged to form the Local 7 Tile Industry Annuity Fund.  See id.  The Tile Layers Local Union 52 Pension Fund was not merged or otherwise changed.  See id.  Historically, Local Union 52 performed tile setting work, and Local Union 88 performed tile finishing work.  See id. ¶ 6. Local Union 52 and Local Union 88 were merged into Local 7.  See id.

At all times relevant to this action, All Flooring agreed to be bound to a collective bargaining agreement between Local 7 and the Greater New York and New Jersey Tile Contractors Association, Inc. (the "CBA"), in effect from June 2013 through June 2017.[2]  See

---

[2] The CBA provides that it "shall be effective for the period from June 3, 2013 to June 2, 2017."  Hill Decl., Ex.

id. ¶ 7; & Ex. A, art. XXX(1), DE #35-1.   The CBA provides that the employers agree to be bound by any trust agreements that regulate the Funds.   See Hill Decl. ¶ 16; CBA, art. IX, § 3(Q).

The CBA obligates employers to make certain benefit contributions to the plaintiff funds and to make dues check-off contributions to the Union, at specified hourly rates for each hour worked by, or paid to, individuals employed by All Flooring, within the trade and geographical jurisdiction of the Union.   See Am. Compl. ¶ 9; Hill Decl. ¶ 11; Declaration of Matthew Guy (Aug. 22, 2019) ¶¶ 5-10, DE #36; see also Hill Decl., Ex. A, art. IX, §§ 3-5; art. XXI, XXII, XXV, XXVI.   The applicable rates are set forth in fringe benefit rate schedules that are periodically updated by the Union.   See Hill Decl. ¶ 11 & Ex. C, DE #35-3.   The CBA also requires employers to submit to an audit to determine whether the employer is accurately reporting hours and remitting contributions.   See Hill Decl. ¶ 12; CBA, art. IX, § 3(G).

Plaintiffs conducted an audit of All Flooring's payroll records, general ledgers, and quarterly tax returns for the period from August 24, 2015 through December 31, 2016, and concluded that the employer had failed to make all of the requisite contributions.[3]   See Am.

---

A, art. XXX(1) & ECF p. 40 ("For the Independent Employer").   Apparently, the Union entered into a subsequent collective bargaining agreement with the Greater New York and New Jersey Tile Contractors Association, Inc., which is effective from June 2017 through June 2021.   See Hill Decl. ¶ 10 & Ex. B, DE #35-2.   The Amended Complaint refers to a single, unspecified, collective bargaining agreement, to which defendant is bound, see Am. Compl. ¶¶ 8, 16, 18, 20.

[3] The audit report distinguishes between tile setting and tile finishing because different rates apply to each type of work.   See Hill Decl. ¶ 6.   Tile setting work is denoted by "Local Union 52," while tile finishing work is signified by "Local Union 88."   See Declaration of Michael R. Sarosy (Aug. 22, 2019) ("Sarosy Decl.") ¶ 8, DE #38.

Compl. ¶¶ 11, 14; Sarosy Decl. ¶¶ 4, 6, 12.   The audit revealed that All Flooring owed

delinquent contributions and dues check-offs in the amount of $427,706.58, plus interest.   See

Sarosy Decl. ¶ 6.   All Flooring failed to dispute the audit report's findings or to pay any

portion of the outstanding amounts, despite having been provided with the report and a demand

for payment.   See Am. Compl. ¶¶ 12, 20; Sarosy Decl. ¶¶ 5, 18.

Thereafter, on January 8, 2019, plaintiffs filed the instant action, seeking to recover

delinquent contributions, interest, statutory damages, auditor's fees and attorney's fees.   See

generally Complaint (Jan. 8, 2019), DE #1.   Although duly served with process, All Flooring

failed to respond to the Complaint or otherwise appear in this action.   See Summons Returned

Executed (Jan. 18, 2019), DE #6.   Accordingly, on March 7, 2019, the Clerk of the Court

entered a notation of default, see Clerk's Entry of Default (Mar. 7, 2019), DE #11, and a few

weeks later, plaintiffs moved for default judgment, see [First] Motion for Default Judgment

(Mar. 21, 2019), DE #13.

By order dated May 17, 2019, this Court requested that plaintiffs supplement their

submissions to address various deficiencies.   See Scheduling Order (May 17, 2019), DE #19.

Plaintiffs supplemented their submissions on June 7, 2019, and, in an effort to address a

problem with plaintiffs' standing to seek contributions on behalf of non-party entities, plaintiffs

sought leave to amend the complaint.   See Memorandum in Support (June 7, 2019) at 8, DE

#21.   On June 12, 2019, this Court granted leave to amend, vacated the Clerk's Entry of

Default and deemed withdrawn plaintiffs' first Motion for Default Judgment.   See Order (June

12, 2019), DE #25.   Plaintiffs filed an Amended Complaint on June 18, 2019, and, despite

5

having been properly served, All Flooring again failed to respond or otherwise appear in this action.  See Am. Compl.; Summons Returned Executed (June 26, 2019), DE #29.

On August 22, 2019, Judge Vitaliano referred the renewed motion for default judgment to the undersigned magistrate judge.

## DISCUSSION

### I.    Applicable Legal Standard – Default Judgment

After the Clerk of the District Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action.    See Fed R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(b).    A defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to damages.    Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6).    Nevertheless, a pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief.    See Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016) (citing Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465 (RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15, 2012)); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law").    Moreover, a

6

fact is not "'well-pleaded' if it is inconsistent with other allegations of the complaint[,]" *In re Indus. Diamonds Antitrust Litig.*, 119 F.Supp.2d 418, 420 (S.D.N.Y. 2000), or is "contrary to uncontroverted material in the file of the case," Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973).

Because the extent of the damages pleaded by a plaintiff is not deemed to be established by the default, the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). This inquiry may be accomplished by evaluating and analyzing affidavits and other documentary evidence submitted by the plaintiff in regards to the level of damages sought. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir. 2015); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). It is within a court's discretion to determine whether the plaintiff's burden has been met, and whether or not to hold an evidentiary hearing. See Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2d Cir. 1991). The moving party is entitled to all reasonable inferences from the evidence it offers. See Romanowicz, 577 F.3d at 84; Au Bon Pain, 653 F.2d at 65.

## II.    Liability

### A.    ERISA

Section 515 of ERISA mandates that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the

7

terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; see also Finkel v. Alltek Sec. Sys. Grp., Inc., No. 10-CV-4887 (DLI)(VVP), 2011 WL 4543498, at *4 (E.D.N.Y. Aug. 26, 2011), adopted as modified on other grounds, 2011 WL 4543495 (E.D.N.Y. Sept. 29, 2011). Plan fiduciaries may bring civil actions to enforce the provisions of such plans and/or collective bargaining agreements. See 29 U.S.C. § 1132(a)(3).

Plaintiffs' unanswered Amended Complaint establishes defendant's liability under ERISA with respect to the delinquencies involving benefit contributions for defendant's employees. Plaintiff trustees of the ERISA Funds are plan fiduciaries as defined by Section 3(21) of ERISA, 29 U.S.C. § 1002(21), and All Flooring is an "employer" within the meaning of Section 3(5), 29 U.S.C. § 1002(5), see Am. Compl. ¶ 7. Furthermore, the Local 7 Benefit Funds and the International Benefit Funds are "employee benefit plans" and "multiemployer plans" within the respective meanings of Section 3(3), 29 U.S.C. § 1002(3), and Section 3(37), 29 U.S.C. § 1002(37). See Am. Compl. ¶¶ 4, 5. Since plaintiffs allege that All Flooring failed to make contributions to the ERISA Funds in violation of the applicable collective bargaining agreement, see id. ¶¶ 14, 20, this Court respectfully recommends that a default judgment be entered against All Flooring in favor of the Local 7 Benefit Funds and the International Benefit Funds for violations of ERISA.

This Court notes, however, that the applicable collective bargaining agreement here is the CBA in effect from June 2013 through June 2017. See Hill Decl., Ex. A. Plaintiffs appear to assert that the evergreen clause contained in the CBA operates to bind All Flooring to the *subsequent* CBA executed by the Union. See Hill Decl. ¶¶ 8-10 & Ex. B. This

position is contrary to the language of the evergreen clause in the 2013-2017 CBA, which states that "this Agreement shall continue from year to year thereafter" unless written notice to terminate is given.   See Hill Decl., Ex. A, art. XXX(3); id. at ECF p. 40 ("This Agreement and any amendments thereto shall automatically renew itself and continue in full force and effect from year to year . . . .").   Plaintiffs assert that neither the plaintiff Funds nor All Flooring provided written notice of an intent to terminate that agreement.   See Hill Decl. ¶ 9. Therefore, the CBA in effect from June 2013 through June 2017 was automatically renewed at its expiration and continues to be the operative agreement between the parties.   See Trs. of Sheet Metal Workers Int'l Ass'n Local No. 38 Ins. & Welfare Fund v. Haldean Sheet Metal Fabricators, Inc., No. 15 CV 5979 (VB), 2017 WL 5633164, at *5 (S.D.N.Y. Nov. 21, 2017) (rejecting argument that evergreen clause bound defendant to successor CBA); The Tile Setters & Tile Finishers Union of N.Y. & N.J. v. Speedwell Design/BFK Enter., LLC, No. 06-cv-5211 (KAM), 2009 WL 922021, at *10-13 (E.D.N.Y. Mar. 31, 2009) (same).

### B.    LMRA

The Court's conclusion that plaintiffs have sufficiently stated a claim under ERISA applies solely to benefit contributions owed to the Local 7 Benefit Funds and the International Benefit Funds for All Flooring employees.   Plaintiffs also seek to collect deficiencies for other entities that they have not alleged are covered by ERISA: "B.A.C. P.A.C."; "International Dues"; "Promotion"; "Building Fund"; "Defense Fund"; "Local P.A.C."; "Local Dues 1"; and "Local Dues 2" (collectively, the "Non-ERISA entities").   Compare Sarosy Decl., Ex. O

at 2,[4] DE #38-1 with Am. Compl. ¶ 6.   Therefore, any liability to those entities must be under the LMRA, if at all.

For unpaid contributions and dues to the Non-ERISA Entities, plaintiffs must sufficiently plead a claim under the LMRA, which provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce[.]"   29 U.S.C. § 185(a).   Under Section 301, "an employer may be held liable for failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement."   Bricklayers Ins. & Welfare Fund v. Primo Bldg. Corp., No. CV 2008-4617(RRM)(MDG), 2012 WL 6043294, at *2 (E.D.N.Y. Sept. 24, 2012), adopted, 2012 WL 6055048 (E.D.N.Y. Dec. 4, 2012); see Sullivan v. Marble Unique Corp., No. 10 CV 3582(NGG)(LB), 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011), adopted, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011); Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665(NG)(RLM), 2007 WL 3124612, at *4 (E.D.N.Y. Oct. 23, 2007).   By alleging that defendant failed to remit union dues and other payments imposed by the CBA, plaintiffs have sufficiently stated a violation of the LMRA.   See Bricklayers Ins. & Welfare Fund v. Tristate Contr. & Masonry, Corp., No. 16 Civ. 04545 (MKB) (VMS), 2018 WL 2244701, at *7 (E.D.N.Y. Feb. 9, 2018) (failure to remit dues and required contributions to non-ERISA entities violated LMRA), adopted in relevant part, 2018 WL 1358813 (E.D.N.Y. Mar. 16, 2018); Bricklayers Ins. & Welfare Fund

---

[4] Page references to the audit report correspond to the page numbers assigned by the ECF system.

v. J.K. Merillin Builders, Inc., No. 13-CV-1048 (ARR)(VVP), 2014 WL 6674404, at *5 (E.D.N.Y. Oct. 6, 2014) (same); Bricklayers Ins. & Welfare Fund v. Verse Inc., No. 12-CV-4271 (FB)(JMA), 2013 WL 4883966, at *4 (E.D.N.Y. Sept. 11, 2013) (same).

Accordingly, this Court respectfully recommends that a default judgment be entered against All Flooring in favor of plaintiffs for violations of the LMRA.

## III.    Damages

Plaintiffs seek to recover delinquent ERISA contributions, interest, statutory damages, and attorney's fees and costs, as well as delinquent Non-ERISA contributions and dues, and interest thereon.   See Sarosy Decl. ¶ 6.   In support of their demand for damages, plaintiffs submitted an auditor's report, as well as the declaration of Michael R. Sarosy explaining the results of the audit.

### A.    Delinquent Contributions and Dues

Under ERISA and the LMRA, plaintiffs are entitled to recover delinquent contributions and dues owed to the Funds and the Union.   See 29 U.S.C. § 1132(g)(2)(A); 29 U.S.C. § 185(a).

Pursuant to the CBA, employers bound by its terms pay their obligated contributions to plaintiffs based on different rates depending on whether an employee performs tile setting or tile finishing work.   See Sarosy Decl. ¶ 8; Hill Decl. ¶ 6 & Ex. C.   In conducting an audit of the defendant employer's records, plaintiffs' auditors examined All Flooring's payroll records, general ledgers, and quarterly tax returns "to determine the total number of hours paid to and worked by employees of All Flooring" during the audit period.   See Sarosy Decl. ¶ 12.

### 1. All Flooring Employees

Based on a review of All Flooring's payroll records, the auditors determined that All Flooring failed to remit contributions to the Funds for 21 hours of work performed by one of All Flooring's tile setter employees.  See id. ¶ 13 & Ex. O at 2-4.  The number of hours worked was multiplied by the applicable rates established by the Union.  See Sarosy Decl. ¶¶ 9, 14; Hill Decl. ¶ 11.  The auditors found that All Flooring owed $805.56 in contributions and dues based on 21 hours worked from January 1, 2016 through June 6, 2016.  See Sarosy Decl. ¶ 14 & Ex. O at 2-4.  "If adequately explained and credited by the Court, the opinion of an auditor is a sufficient basis for an award of a specific amount of damages."  Philip Gen. Constr., 2007 WL 3124612, at *10; see Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO v. Eastport Excavation & Utilities Inc., 3 F.Supp.3d 204, 216 (S.D.N.Y. 2014).  Having examined the audit report submitted by plaintiffs, and the applicable rate for each Fund (see Hill Decl., Ex. C), this Court finds that plaintiffs correctly calculated $805.56 in unpaid contributions and dues for one tile setter employee, as set forth in the audit report.

### 2. Subcontractors and Other Individuals

Plaintiffs also seek to recover $426,901.02 in delinquent contributions and dues for work performed by tile setters and tile finishers that did not work directly for All Flooring but were subcontractors that All Flooring contracted with during the audit period.  See Sarosy Decl. ¶¶ 15-36 & Ex. O at 5, 13.  Plaintiffs rely on two provisions of the CBA to support their argument that All Flooring was bound to remit contributions and dues to plaintiffs for

work performed by its subcontractors or other individuals.   First, plaintiffs argue that Article

VIII of the CBA, titled "Affiliated and/or Related Companies," operates to require employers

to pay fringe benefit contributions and dues on behalf of its subcontractors.   See Memorandum

in Support (Aug. 22, 2019) ("Pl. Mem.") at 6-7, DE #39.   That provision states:

> If and when the Employer shall perform any work of the type covered by this
> Agreement at the site of a construction project, under its own name or under the
> name of another, as a corporation, company, partnership, or any other business
> entity, including joint venture wherein the Employer . . . exercises either
> directly or indirectly (such as through family members) any significant degree of
> ownership, management or control, the terms and conditions of this Agreement
> shall be applicable to all such work.

Hill Decl., Ex. A, art. VIII, § 2.   This Court is not persuaded that on the facts presented,

Article VIII of the CBA applies to All Flooring's subcontractors.   Here, plaintiffs have not

alleged, let alone submitted any evidence, that All Flooring exercised, either directly or

indirectly, any significant degree of ownership, management or control over the subcontractors

or individuals at issue.   Nor has plaintiff alleged that any of these subcontractors were

affiliates or otherwise related to All Flooring.   Thus, Article VIII of the CBA does not require

All Flooring to pay contributions and dues for the hours worked by its subcontractors.

Plaintiffs further rely on Article XVI of the CBA, which prohibits the employment of

subcontractors who are not signatories to the CBA.   See Pl. Mem. at 8-11; Hill Decl., Ex. A,

art. XVI.   Article XVI provides that where an employer hires a signatory subcontractor,

"[t]he employer shall not be responsible for payment of fringe benefits of a signatory

subcontractor."   Hill Decl., Ex. A, art. XVI.   According to plaintiffs, this provision

mandates that if "a signatory union employer enlists a non-union subcontractor or non-union

13

individual to perform Covered Work at its behest, the obliga[t]ions prescribed by the CBA shall apply to the non-union subcontractor." See Hill Decl. ¶ 14. However, plaintiffs' argument is based on terms in the CBA that do not exist.

While stating than an employer is not responsible for the contributions of a signatory subcontractor, Article XVI does not address whether an employer is responsible for the contributions of a non-signatory subcontractor. Put simply, "there is no provision of the CBA which authorizes plaintiffs to seek contributions from the employer for the hours worked by subcontractors." Trs. of the Local 7 Tile Industry Welfare Fund v. EAQ Constr. Corp., 14 CV 4097 (SJ) (CLP), 2016 WL 4540306, at *9 (E.D.N.Y. Aug. 12, 2016), adopted, 2016 WL 4536866 (E.D.N.Y. Aug. 30, 2016); see Trs. of the Local 7 Tile Industry Welfare Fund v. Caesar Max Constr. Inc., 18 CV 1339 (FB)(LB), 2019 WL 1130727, at *9 (E.D.N.Y. Feb. 11, 2019), adopted, 2019 WL 1129430 (E.D.N.Y. Mar. 12, 2019); cf. Mason Tenders v. Abatement Int'l/Advatex Assocs., 82 F.Supp.2d 175, 177-78 (S.D.N.Y. 2000) (finding general contractor liable under ERISA for subcontractor's unpaid contributions and dues where CBA expressly provided that contractor agrees to assume subcontractor's obligations).[5] This

---

[5] In concluding that the employer was liable under ERISA for unpaid benefit contributions for work performed by subcontractors in Trustees of Local 7 Tile Industry Welfare Fund v. Caesar Max Tile Corp., No. 13-CV-924(RRM)(VMS), 2014 WL 991723, at *8 (E.D.N.Y. Mar. 13, 2014), the court relied on the allegations in the complaint and testimony offered at an inquest hearing that "Defendants are required by the CBA to pay fringe benefit contributions 'in connection with all work performed in the trade and geographical jurisdiction of the Union.'" Id. at *8. However, the express terms of the applicable CBA in this case do not include such a provision. As noted earlier, an allegation is not "well pleaded" if it is "contrary to uncontroverted material in the file of the case." Trans World Airlines, 449 F.2d at 63; see J&J Sports Prods., Inc. v. Exclusive Lounge & Grill Inc., 15-CV-6534, 2017 WL 1082416, at *3 (E.D.N.Y. Mar. 22, 2017) (denying motion for default judgment because allegation in complaint was contradicted by evidence submitted by plaintiff).

Court, therefore, recommends denying plaintiffs' request for unpaid contributions for non-employees of All Flooring under ERISA.

Plaintiffs are not without a remedy, however.   As discussed above, Article XVI of the CBA prohibits defendants from hiring a non-signatory subcontractor to perform covered work. Here, plaintiff has submitted evidence that All Flooring used non-signatory subcontractors in violation of that provision.   See Sarosy Decl. ¶¶ 16-17, 29.   Plaintiffs may recover compensatory damages for this violation of the CBA under the LMRA.   See Chicago Painters & Decorators Pension, Health & Welfare & Deferred Sav. Plan Trust Funds v. Karr Bros., 755 F.2d 1285, 1288-90 (7th Cir. 1985) (affirming award under LMRA for unpaid contributions to trust funds that employer would have had to contribute if it had used its employees instead of independent contractors); Trs. of the Teamsters Constr. Workers Local 13, Health & Welfare Trust Fund for Colo. v. Hawg N Action, Inc., 651 F.2d 1384, 1386-88 (10th Cir. 1981) (employer's failure to require subcontractors to make payments to trust funds was a breach of the CBA); see also Structure Tone, Inc. v. New York City Dist. Council of Carpenters Pension Fund, No. 17-cv-2917 (RJS), 2018 WL 1633768, at *3 (S.D.N.Y. Mar. 30, 2018) ("any general contractor bold enough to employ a non-signatory subcontractor would be in breach of the CBA").

The measure of damages for breach of contract is that which would put plaintiffs in the same position they would have been in absent the breach.   If All Flooring had used signatory subcontractors or employees of All Flooring to perform the covered work, plaintiffs would have been paid the corresponding benefit contributions and dues on behalf of those employees.

15

Therefore, plaintiffs may recover the unpaid contributions and dues that they would have received had defendant complied with the CBA.  See Flynn v. Dick Corp., 481 F.3d 824, 832 (D.C. Cir. 2007) (holding that benefit fund "is entitled to damages resulting from the breach [(hiring non-union subcontractors)] in the form of benefit contributions in a sum equal to that which they would have received if the agreement between the defendant and the union had been fully performed by all parties") (internal quotation marks and citation omitted); Karr Bros., 755 F.2d at 1290 ("[T]he district court correctly required defendant to pay plaintiffs the amount that defendant would have been required to contribute to the trust funds if it had complied with the collective bargaining agreements and hired employees to do bargaining unit work."); Hawg N Action, 651 F.2d at 1386-87 (funds' trustees were entitled to damages equal to what they would have received had employer not violated CBA by using non-signatory subcontractor).

Based on a review of defendant's general ledger, reflecting payments made to various individuals or subcontractors for tile setter work performed within plaintiffs' jurisdiction, plaintiffs' auditors determined that All Flooring failed to pay contributions and dues for 10,030 hours of covered tile setter work.  See Sarosy Decl. ¶ 15 & Ex. O at 6.  The auditors inferred that the payments were for covered work subcontracted to union members or to non-signatory employers in violation of the CBA.  See Sarosy Decl. ¶ 16.  The auditors' inference was based on a number of factors: 1) the recipient of payments from All Flooring was a non-union

company owned and operated by a former member of the Union[6]; 2) notations in the general ledger or cash disbursements ledger were suggestive of subcontracting, such as "subcontractor expense" or "consulting fee"; 3) disbursements were made to individuals in round numbers, such as those to Alvin Pena, in the amount of $1,125.00; 4) the individuals receiving money were union members or former union members.  See id. ¶ 17 & Ex. R.  Since the number of hours worked is not reflected in the general ledger, plaintiffs' auditors divided the total disbursements by the applicable wage rate.  See id. ¶ 20.  To justify that approach, plaintiffs reason that the recipients of the disbursements do not have overhead costs, as they either are individuals or sole proprietorships operating from a former union member's residential address; therefore, the auditors deemed all such payments to be compensation for work covered by the CBA.  See id. ¶ 19.  The auditors then multiplied the number of hours worked by the applicable benefit rate, see id. ¶ 20, and determined that All Flooring failed to remit $380,107.56 in unpaid contributions and dues for tile setter work, see id. ¶ 27.

As to tile finishing work, plaintiffs' auditors followed a similar approach and found that All Flooring failed to make payments for 1,408 hours of covered work performed by individuals with a history as tile finishers.  See Sarosy Decl. ¶ 28 & Ex. O at 14.  Those individuals were either members of the Union performing tile finishing or individuals on behalf of whom All Flooring had previously paid contributions for tile finishing work.  See Sarosy Decl. ¶ 29.  Again, the auditors determined the number of hours worked by dividing the total

---

[6] For example, Precision Tile Installations LLC, a subcontractor of All Flooring, is incorporated at the residential address of a former member of the Union.  See Sarosy Decl. ¶ 17 & Ex. Q.

payments made to the third parties by the applicable wage rate.  See id. ¶ 31.  After multiplying those hours by the applicable benefit rate, plaintiffs' auditors concluded that All Flooring failed to make payments for tile finishers in the amount of $46,793.46.  See id. ¶ 36.

Plaintiffs have submitted a detailed affidavit explaining their auditors' methodology, the basis for the inferences drawn, and the underlying general ledger entries upon which the auditors relied.  Where an employer fails to produce evidence to dispute the inferences drawn by plaintiffs pursuant to an audit, "the court may award damages to the trustee[s] even where the damages are an approximate amount."  Fuchs v. Tara Gen. Contracting, Inc., No. CV 06-1282(ETB), 2009 WL 2922840, at *7 (E.D.N.Y. Sept. 8, 2009) (quoting Hanley v. Ocean Beach Club, Inc., No. 96 Civ. 4478, 1998 WK 65990, at *5 (S.D.N.Y. Feb. 18, 1998) (internal quotation marks omitted)); see Grabois v. Action Acoustics, Inc., 94 Civ. 7386 (NRB), 1995 WL 662127, at *3 (S.D.N.Y. Nov. 9, 1995).  Courts in this Circuit routinely rely on an auditor's uncontested opinion in determining unpaid contributions.  See Trs. of Laborers Local Union No. 1298 of Nassau & Suffolk Counties Benefit Funds v. Sitework Mgmt., Inc., 206 F.Supp.3d 790, 796 (E.D.N.Y. 2016) (reversing magistrate judge's denial of damages based on audit where amount claimed was undisputed); Trs. of Mosaic & Terrazzo Welfare, Pension, Annuity & Vacation Funds v. RPT N.Y. L.L.C., No. 12-CV-03875 (CBA)(MDG), 2013 WL 5460292, at *6 (E.D.N.Y. Sept. 30, 2013).  More specifically, courts in this Circuit have relied on such audit reports' findings that an employer owes unpaid contributions on behalf of workers who completed subcontracted work.  See Brown v. C. Volante Corp., 194 F.3d 351, 357 (2d Cir. 1999) (affirming district court's reliance on

18

auditor's testimony that employer owed contributions for subcontracted employees' work); Gesualdi v. Fortunata Carting Inc., 5 F.Supp.3d 262, 273 (E.D.N.Y. 2014) (relying on auditor's estimate of prevailing rate in the industry to estimate the number of hours worked by outside truck hires); Gesualdi v. RRZ Trucking Co., No. CV 03-3449(ETB), 2011 WL 1988374, at *2, *4-5 & n.9 (E.D.N.Y. May 20, 2011) (relying on auditor's calculation of unpaid contributions for subcontractors and/or outside truck hires, while recognizing that, because employer's payroll records and tax returns did not reflect the number of hours worked, "it was impossible for plaintiff's accountant to determine precisely the amount of contributions due").

In the absence of conflicting evidence, this Court credits the audit report submitted by plaintiffs.  Here, plaintiffs' auditor characterized All Flooring's payments to subcontractors and individuals as payments entirely for labor, based on the inference that these individuals and sole proprietorships have no overhead costs.  See Sarosy Decl. ¶ 19.  Plaintiffs' auditor used those payments to estimate the hours worked and then determined the amount of unpaid contributions and dues.  All Flooring did not dispute the audit's findings when plaintiffs provided All Flooring with a copy of the audit.  See id. ¶ 18.  In the absence of contradictory evidence, the Court concludes that the audit report provides a sufficient basis to support the amount sought by plaintiffs.  See Fortunata Carting, 5 F.Supp.3d at 273 (awarding damages based on auditor's estimate of hours worked); Caesar Max Tile, 2014 WL 991723, at *4 (relying on audit report's estimate of hours worked based on amount paid to subcontractor); RRZ Trucking, 2011 WL 1988374, at *2, *4-5 & n.9 (defendant failed to present any evidence

19

disputing audit's findings).[7]

Therefore, this Court recommends awarding plaintiffs $426,901.02 in compensatory damages for the work done by subcontractors and individuals hired by All Flooring, resulting in a total of $427,706.58 for unpaid contributions and dues under ERISA and the LMRA.

## B.    Interest

Under Section 502(g)(2) of ERISA, where an employer fails to remit required contributions to a plan, the plan is entitled to interest on the unpaid contributions, calculated at the rate "provided under the plan," or, if unstated, the rate prescribed in 26 U.S.C. § 6621. See 29 U.S.C. § 1132(g); Finkel v. Omega Commc'n Servs., Inc., 543 F.Supp.2d 156, 161 (E.D.N.Y. 2008).

Plaintiffs calculated interest at a rate of 10 percent for the Local 7 Benefit Funds and at a rate of 15 percent for the International Benefit Funds, as specified in the Collection Policy adopted by the Funds.[8]    See Sarosy Decl. ¶ 43; Hill Decl., Ex. D.   By its own terms, however, the Collection Policy applies only to the Welfare, Pension and Annuity Funds.   See Hill Decl., Ex. D.   Nevertheless, since the CBA itself provides for the same interest rates as

---

[7] But cf. EAQ Constr., 2016 WL 4540306, at *10 (finding impermissible auditor's calculation of the number of hours worked by subcontractor by using total payments made to subcontractor, "as payments made to subcontractors often include costs beyond wages paid to a subcontractors' employees").

[8] The Collection Policy is binding on employers pursuant to Article IX, Section 3(Q) of the CBA (employer agrees to be bound by, inter alia, "all By-Laws, rules and resolutions adopted to regulate each of the Funds"). See Trs. of the Local 7 Tile Indus. Welfare Fund v. Larsen Marble & Tile, LLC, 18-CV-1025 (ARR) (SMG), 2018 WL 6363923, at *4 (E.D.N.Y. Nov. 19, 2018), adopted as modified on other grounds, 2018 WL 6344188 (E.D.N.Y. Dec. 5, 2018); Tr. of Local 7 Tile Indus. Welfare Fund v. Richard's Improvement Bldg., Inc., No. 12-CV-6143 (MKB), 2013 WL 3967326, at *4 n.3 (E.D.N.Y. Aug. 1, 2013).

the Collection Policy, but applies those rates to all the fringe benefit funds, the discrepancy is immaterial.   See Hill Decl., Ex. A, art. IX, § 3.   Therefore, consistent with the CBA, this Court recommends applying the 10 percent interest rate to unpaid benefit contributions owed to the Local Funds and the 15 percent interest rate to unpaid benefit contributions owed to the International Funds, under ERISA.

Plaintiffs' application for an award of interest does, however, suffer from a different deficiency, to wit, plaintiffs calculated interest by compounding interest annually.   See Sarosy Decl. ¶ 44.   But neither the CBA nor the Collection Policy provides for an award of compound interest.   Courts in this District regularly decline to award compounded interest in the absence of a plan document providing for compounding.   See Trs. of the Leather Goods, Handbags, & Novelty Workers' Union Local 1 Joint Ret. Fund v. Crossbay Seashell Fish Mkt., Inc., 19-CV-1722 (RJD) (SMG), 2019 WL 4418884, at *5 (E.D.N.Y. Aug. 30, 2019), adopted, 2019 WL 4415621 (E.D.N.Y. Sept. 16, 2019); Caesar Max, 2019 WL 1130727, at *9; Larsen Marble & Tile, 2018 WL 6363923, at *4.   Therefore, this Court recommends awarding only simple interest.

Plaintiffs have also failed to adequately explain how they calculated interest.   It appears that plaintiffs' auditor calculated interest from January 1st of the year in which the contributions were due.   See Sarosy Decl. ¶ 45 (describing that interest due for 2015 is 15 percent of the benefits that were not paid in 2015).   Plaintiffs fail to explain why they thus used January 1st as the accrual date for contributions that became due later in the year. Indeed, the CBA and the Collection Policy both direct that interest should be calculated from

the "due date."  See Hill Decl., Ex. A, art. IX, § 3(L); id., Ex. D, art. II, ¶ 5.

Where damages are incurred over a period of time, courts in this District often calculate prejudgment interest from a "single reasonable intermediate date" during the audit period.  See Larsen Marble & Tile, 2018 WL 6363923, at *4; Trs. of the Local 7 Tile Indus. Welfare Fund v. Alp Stone, Inc., No. 12-CV-5974 (NG)(RER), 2015 WL 4094615, at *7 (E.D.N.Y. June 17, 2015); see N.Y. C.P.L.R. § 5001(b).  Since the audit period here is from August 24, 2015 to December 31, 2016, the Court recommends using an accrual date of April 27, 2016.

In addition, plaintiffs applied the above interest rates not only to unpaid benefit contributions to the ERISA Funds, but to unpaid contributions to non-ERISA Funds and dues to the Union.  For the failure to pay amounts recoverable under the LMRA, as opposed to ERISA, the award of prejudgment interest is within the Court's discretion at a rate within the Court's discretion.  See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Coastal Envtl. Grp. Inc., No. 18-CV-5791-LDH-SJB, 2019 WL 5693916, at *8 (E.D.N.Y. Aug. 30, 2019); Caesar Max, 2019 WL 1130727, at *10 (internal quotation marks and citation omitted) (citing cases); see also Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1161 (2d Cir. 1994).  Since the CBA here does not provide for an interest rate for unpaid union dues or Political Action Committee ("P.A.C.") contributions, courts typically award interest, in their discretion, at the New York statutory rate of 9 percent.  See Caesar Max, 2019 WL 1130727, at *10 (citing cases).  On the other hand, for unpaid contributions to

non-ERISA fringe benefit funds, the CBA does not distinguish between ERISA and non-ERISA funds, but instead sets the same interest rates.  See Hill Decl., Ex. A, art. IX, § 3(L). Therefore, the Court recommends applying the interest rate prescribed in the CBA for fringe benefit funds.  See Finkel v. Fervent Elec. Corp., No. 13-CV-3289 (NGG)(RER), 2015 WL 1469560, at *5 (E.D.N.Y. Feb. 23, 2015) ("where a contribution is paid late in violation of the CBA, the LMRA provides a statutory basis for enforcing the relevant contractual terms, . . . [and for the court, in its] discretion, to award prejudgment interest and to set the applicable rate for such LMRA claims"), adopted as modified on other grounds, 2015 WL 1469728 (E.D.N.Y. Mar. 23, 2015); Richard's Improvement, 2013 WL 3967326, at *4 (applying Collection Policy interest rates to "ERISA and non-ERISA plans alike").

Finally, as to unpaid contributions on behalf of subcontractors and individuals, this Court has recommended awarding such damages on a breach of contract theory.  "In awarding interest, a court may look to state law to determine an appropriate rate."  Sullivan v. Marble Unique Corp., No. 10 CV 3582 (NGG)(LB), 2011 WL 5401987, at *7 (E.D.N.Y. Aug. 30, 2011) (internal quotation marks and citation omitted), report and recommendation adopted, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011).  Accordingly, this Court recommends applying the New York statutory interest rate of 9 percent for the breach of contract (LMRA) claims. See N.Y. C.P.L.R. §§ 5001(a), 5004.

Applying the above principles to the facts established by plaintiffs' audit, this Court recommends an award of interest at a daily rate of **$105.50** from April 27, 2016 until the entry of judgment, as follows:

23

As to defendant's failure to make payments for All Flooring's employees (Sarosy

Decl., Ex. O at 2):

| Fund | Unpaid Principal | Interest Rate | Daily Interest |
|---|---|---|---|
| International Pension | $ 57.75 | 15% | $0.0237 |
| IU Pension Surcharge | $ 17.01 | 15% | $0.0069 |
| IMI | $ 18.27 | 15% | $0.0075 |
| B.A.C. P.A.C. | $   0.63 | 9% | $0.0001 |
| International Dues | $ 18.27 | 9% | $0.0045 |
| Welfare | $213.15 | 10% | $0.0583 |
| Retiree Welfare | $ 63.00 | 10% | $0.0172 |
| Local Pension | $ 81.90 | 10% | $0.0224 |
| Vacation | $ 52.50 | 10% | $0.0143 |
| Supplemental | $ 42.00 | 10% | $0.0115 |
| Annuity | $178.50 | 10% | $0.0489 |
| Promotion | $   2.10 | 10% | $0.0005 |
| Training | $   2.10 | 10% | $0.0005 |
| Building | $   0.42 | 10% | $0.0001 |
| Defense | $   2.10 | 10% | $0.0005 |
| Local P.A.C. | $   1.05 | 9% | $0.0002 |
| Local Dues 1 | $ 36.54 | 9% | $0.0090 |
| Local Dues 2 | $ 18.27 | 9% | $0.0045 |
| **Total** | **$805.56** | | **$0.23** |

As to defendant's failure to make payments on behalf of its subcontractors and other

individuals (Sarosy Decl., Ex. O at 5, 13):

| Fund | Unpaid Principal | Interest Rate | Daily Interest |
|---|---|---|---|
| International Pension | $ 31,454.58 ($27,582.57+$3,872.01) | 9% | $   7.76 |
| IU Pension Surcharge | $  8,825.68 ($7,788.09+$1037.59) | 9% | $   2.18 |
| IMI | $  9,639.90 ($8,646.68+$993.22) | 9% | $   2.38 |
| B.A.C. P.A.C. | $      343.22 ($300.97+$42.25) | 9% | $   0.08 |

| Fund | Unpaid Principal | Interest Rate | Daily Interest |
|------|------------------|---------------|----------------|
| International Dues | $    9,639.90 ($8,646.68+$993.22) | 9% | $    2.38 |
| Welfare | $114,251.40 ($100,380.52+$13,870.88) | 9% | $ 28.17 |
| Retiree Welfare | $ 33,956.00 ($29,732.00+4224.00) | 9% | $    8.37 |
| Local Pension | $ 44,309.33 ($38,883.15+$5,426.18) | 9% | $ 10.93 |
| Vacation | $ 27,695.00 ($25,254.00+$2,441.00) | 9% | $    6.83 |
| Supplemental | $ 22,219.51 ($2,159.51+$20,060.00) | 10% | $    5.48 |
| Annuity | $ 91,853.71 ($8,321.50+$83,532.21) | 9% | $ 22.65 |
| Promotion | $    1,143.80 (1,003.00+140.80) | 9% | $    0.28 |
| Training | $       750.05 ($683.70+$66.35) | 9% | $    0.18 |
| Building | $       228.76 ($200.60+$28.16) | 9% | $    0.06 |
| Defense | $    1,118.74 ($977.94+$140.80) | 9% | $    0.28 |
| Local P.A.C. | $       571.98 ($501.57+70.41) | 9% | $    0.14 |
| Local Dues 1 | $ 19,187.96 ($17,215.60+$1,972.36) | 9% | $    4.73 |
| Local Dues 2 | $    9,711.50 ($8,718.28+$993.22) | 9% | $    2.39 |
| **Total** | **$426,901.02** | | **$105.27** |

### C.    Statutory Damages

Pursuant to Section 502(g)(2) of ERISA, plaintiffs are also entitled to statutory damages on the ERISA delinquencies in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the amount of unpaid contributions.   29 U.S.C. § 1132(g)(2)(C).   Plaintiffs

request liquidated damages in the amount of 20 percent of the unpaid contributions to the ERISA funds, with the exception of the IMI and Training Funds.   See Sarosy Decl. ¶¶ 48-49 & Ex. O at 2, 5, 13.   The Collection Policy and the CBA provide for liquidated damages of 20 percent of delinquent contributions owed.   See Hill Decl., Ex. A, art. IX, § 3(L); id., Ex. D, art. II, ¶ 5.   Plaintiffs have not sought liquidated damages for unpaid amounts that are owed to the non-ERISA entities, see e.g., Sarosy Decl., Ex. O at 2 (listing deficiency amounts, but not liquidated damages, for P.A.C. contributions, union dues, etc.), presumably because liquidated damages are not available to the non-ERISA entities pursuant to Section 502(g)(2)(C), see Larsen Marble & Tile, 2018 WL 6363923, at *5 n.3.   Therefore, this Court recommends awarding liquidated damages only for unpaid contributions to the ERISA Funds on behalf of All Flooring employees, pursuant to 29 U.S.C. § 1132(g)(2).

Plaintiffs also request an award of liquidated damages for the ERISA Funds for unpaid contributions on behalf of subcontractors and individuals hired by All Flooring.   See Sarosy Decl. ¶ 52 & Ex. O at 5, 13.   However, since those unpaid contributions are recoverable only under the LMRA, as opposed to ERISA, plaintiffs are not entitled to statutory remedies under 29 U.S.C. § 1132(g)(2) for those damages.   Therefore, any liability for liquidated damages for these breach of contract damages must stem from the CBA.   See Huff v. Cruz Contracting Corp., 643 F.Supp.2d 344, 361-65 (S.D.N.Y. 2009) (considering whether CBA provided for liquidated damages where 29 U.S.C. § 1132 did not provide a basis for statutory damages). As discussed above, the CBA does not address the remedy where an employer breaches the agreement by using subcontractors or other individuals to perform covered work.   In the

absence of a contractual basis for liquidated damages on behalf of subcontractors and individuals, this Court recommends that plaintiffs' request for liquidated damages in connection with these unpaid contributions be denied.

Accordingly, this Court recommends that the ERISA Funds be awarded statutory damages for unpaid contributions on behalf of All Flooring employees in the amount of 20 percent of the outstanding contributions as follows: $14.95 to the International Funds and $126.21 to the Local Funds, for a total of $141.16.  See Sarosy Decl., Ex. O at 2, 5, 13.

### D.    Audit Costs

Plaintiffs seek to recover audit costs in the amount of $3,200.00.  See Affirmation of John M. Harras (Aug. 22, 2019) ("Harras Aff.") ¶ 36, DE #37; Sarosy Decl. ¶ 42.  Although ERISA does not expressly provide for the recovery of audit costs, it authorizes an award of "such other legal and equitable relief as a court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  Courts in this District routinely award audit fees under this provision, especially when the collective bargaining agreement provides for such an award.  See Coastal Envtl. Grp., 2019 WL 5693916, at *12; Larsen Marble & Tile, 2018 WL 6363923, at *5-*6. Here, the CBA provides that "[i]f the audit amount for any year is at least three (3%) percent of the Employer's annual gross payroll for covered employees for that year, the Employer shall pay the cost of the audit.  Where the audit covers more than one year, then the three percent shall be calculated on the total gross payroll for covered employees for the period of the audit."  Hill Decl., Ex. A, art. IX, § 3(M).  According to plaintiffs' auditor, "the audit amount was more than three percent (3%) of the employer's annual gross payroll for covered

employees." Sarosy Decl. ¶ 38. Although the audit period was for more than one year, this Court recommends granting plaintiffs' request for an award of audit costs.

"Requests for audit fees are generally determined by utilizing the same standards the court applies in awarding attorneys' fees." Alp Stone, 2015 WL 4094615, at *8 (internal quotation marks and citations omitted). Accordingly, the party requesting an audit fee must provide information as to the rates charged and the hours expended. See Coastal Envtl. Grp., 2019 WL 5693916, at *12; Alp Stone, 2015 WL 4094615, at *8.

Here, plaintiffs' auditor attests that he charged plaintiffs $80 per hour and spent 40 hours on the audit. See Sarosy Decl. ¶¶ 40-41. The amount requested is within the range of audit fee awards in this District. See Gesualdi v. Interstate Payroll Co., Inc., 2:14-cv-06780 (ADS)(SIL), 2019 WL 109379, at *9 (E.D.N.Y. Jan. 4, 2019) (recommending award of $3,029.29); Larsen Marble & Tile, 2018 WL 6363923, at *6 (recommending award of $5,440). Therefore, this Court recommends awarding plaintiffs $3,200 for audit fees.

E.    **Attorney's Fees and Costs**

1.    **Attorney's Fees**

ERISA provides for an award of attorney's fees where plaintiffs obtain a favorable judgment under Section 515.[9] See 29 U.S.C. § 1132(g)(2)(D). Plaintiffs bear the burden of

---

[9] The LMRA does not provide for an award of attorneys' fees. See New York City Dist. Council of Carpenters v. New England Constr. Co., Inc., 16 Civ. 6608 (KPF), 2017 WL 1967743, at *4 (S.D.N.Y. May 11, 2017); Trs. of the New York City Dist. Council of Carpenters Pension Fund v. Formula 1 Builders, LLC, 1:17-cv-1234-GHW, 2017 WL 1483369, at *4 (S.D.N.Y. Apr. 25, 2017). However, "[h]ours spent on legal work that furthers both fee-shifting and non-fee-shifting claims may be included in the lodestar calculation because they would have been expended even if the plaintiff had not included non-fee-shifting claims in his complaint." Millea v. Metro-N. R.R. Co., 658 F.3d 154, 168 n.4 (2d Cir. 2011). Such is the case here, as the ERISA and LMRA claims are inextricably intertwined. See Anderson v. Cty. of Suffolk, CV 09-1913(GRB), 2016 WL 1444594, at

proving the reasonableness of the fees sought.   See Savoie v. Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999).   In considering an application for attorney's fees, the Court must first determine the presumptively reasonable fee.   See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).   This presumptively reasonable fee - or lodestar[10]- is essentially "'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'"   Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quoting Arbor Hill, 493 F.3d at 112, 118).

Courts can and should exercise broad discretion in determining a reasonable fee award. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's "considerable discretion").   The method for determining reasonable attorney's fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases.   See Arbor Hill, 522 F.3d at 186 n.3, 190.   In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits.   This is known as the "forum rule."   See Simmons, 575 F.3d at 174-75 (recounting history of the forum rule); see also

---

*8 n.7 (E.D.N.Y. Apr. 11, 2016) (noting that state law claims were "inextricably intertwined" with fee-shifting claims and that billing records did not show significant amount of work allocable only to state law claims).

[10] The lodestar is the product of the number of hours reasonably expended on the litigation and a reasonable hourly rate.   See Arbor Hill, 522 F.3d at 183.

Arbor Hill, 522 F.3d at 191 ("We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.").

Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190.   With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit."   N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).   The Court must review these time records and the hours an attorney billed in order to determine the reasonableness of such and, in doing so, should examine the value of the work product and "exclude excessive, redundant or otherwise unnecessary hours."   Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319 (ARR)(VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999)), adopted, 2010 WL 2539661 (E.D.N.Y. June 17, 2010); see Hensley, 461 U.S. at 434; Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994).

### a.    Hourly Rates

Plaintiffs seek to recover for the time spent by four Virginia and Ambinder, LLP ("V&A") attorneys on this matter: three associates who billed at the rate of $265.00 per hour; and one partner whose rate of $265.00 per hour was raised to $350 per hour as of February 28, 2019.   See Harras Aff. ¶¶ 26-29.   John M. Harras is an associate attorney, who graduated law school in 2015, see id. ¶ 26; Marlie Blaise is an associate, who graduated law

- 30 -

school in 2018, see id. ¶ 28; Adrianna R. Grancio is an associate and 2016 law school graduate, see id. ¶ 29; and Nicole Marimon is a 2014 law school graduate and partner, see id. ¶ 27.

The rates requested by counsel are on the higher end of the range usually awarded in ERISA matters in this District.   Typically, courts in the Eastern District of New York award partners in the range of $200 to $400 per hour, $200 to $375 per hour for senior associates, and $100 to $150 for junior associates, for their work on similar ERISA matters.   See Interstate Payroll, 2019 WL 109379, at *8 (collecting cases); Larsen Marble & Tile, 2018 WL 6363923, at *6 (recommending reducing hourly rate for Ms. Marimon from $265 to $200); New York City Dist. Council of Carpenters v. Trs. of New York City Dist. Council of Carpenters Welfare Fund, 16-CV-3429 (ARR)(ST), 2018 WL 3768586, at *4 (E.D.N.Y. July 23, 2018) (recommending award of $200 per hour for V&A "of counsel" with less than 5 years' experience and $300 per hour for attorney with 9 years' experience), adopted, 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018).   Accordingly, this Court recommends that the requested hourly rates be reduced as follows:

| Attorney | Requested Rate | Recommended Rate |
|---|---|---|
| Nicole Marimon | $265 and $350 from 2/28/19 | $265 |
| Marlie Blaise | $265 | $150 |
| Adrianna Grancio | $265 | $200 |
| John Harras | $265 | $225 |

In addition, plaintiffs request a rate of $115 per hour for the work of legal assistants. See Harras Decl. ¶ 30.   This Court recommends a modest reduction of that rate to $100 per hour.   See Trs. of Local 813 Ins. Trust Fund v. Personal Touch Funeral Serv., Inc., 18-cv-6535 (NG)(VMS), 2019 WL 2295775, at *3 (E.D.N.Y. May 30, 2019); Finkel v. Millennium Fire Servs., LLC, 18-cv-3538 (NG) (JO), 2019 WL 1605186, at *4 (E.D.N.Y. Apr. 4, 2019).

### b.    Hours Billed

Plaintiffs' counsel billed 89.1 hours on this matter.   See Harras Decl. ¶ 32.   This Court finds that the amount of time spent was excessive and redundant.   Plaintiffs have submitted counsel's contemporaneous billing records, which contain a description of the services provided and the amount of time spent.   See id., Ex. M, DE #37-9.   A review of the records reflects that plaintiffs seek recovery for time spent on the original complaint, the first motion for default judgment, responding to the Court's request for supplemental briefing based on the inadequacies in plaintiffs' submissions, the amended complaint, and the second motion for default judgment.   As a result, the billing entries include a considerable amount of work that could have been avoided had counsel identified and eliminated the problems that plagued their initial pleading and submissions.

In evaluating fee requests, the Court "need not, and indeed should not, become green-eyeshade accountants."   Fox v. Vice, 563 U.S. 826, 838 (2011).   Rather than engage in a line-by-line reduction of the billing records, the Court may make an across-the-board reduction in the amount of hours.   See Green v. City of New York, 403 F.App'x 626, 630 (2d Cir. 2010); Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998).   Under the circumstances

here, this Court recommends applying a 30 percent reduction in the number of hours billed.

See EAQ Constr., 2016 WL 4540306, at *15 (applying a 30 percent reduction for insufficient

submissions and redundancies); Gesualdi v. Stallone Testing Labs., Inc., No. 10-CV-646

(ENV)(LB), 2011 WL 2940606, at *1 (E.D.N.Y. July 19, 2011) (overruling objections and

adopting recommendation to apply a 50% reduction to fees for errors and poor drafting).

### c.    Presumptively Reasonable Fee

Applying the reduced hourly rates described above and the 30 percent reduction to the

amount of hours claimed, this Court recommends awarding plaintiffs attorneys' fees of

$11,5365.35 as set forth below.

| Attorney | Reduced Hourly Rate | Reduced Hours | Fee |
|----------|---------------------|---------------|-----|
| Nicole Marimon | $265 | 4.34 | $ 1,150.10 |
| Marlie Blaise | $150 | 14.42 | $ 2,163.00 |
| Adrianna Grancio | $200 | 11.06 | $ 2,212.00 |
| John Harras | $225 | 22.89 | $ 5,150.25 |
| Legal Assistants | $100 | 8.61 | $   861.00 |
| **Total** | | **61.32** | **$11,536.35** |

### 2.    Costs

Section 502(g)(2) of ERISA provides that in any action brought by a fiduciary on behalf

of a plan in which judgment in favor of the plan is awarded, the court shall allow "costs of the

action, to be paid by the defendant."   29 U.S.C. § 1132(g)(2)(D).   Plaintiffs request $568.33

in costs — representing a $400 filing fee, $70 each for service of the original complaint and the

amended complaint, and various charges for postage and research.   See Harras Decl. ¶ 33 &

Ex. M.   These costs are largely reasonable.   However, this Court recommends denying

reimbursement for service of the original complaint, which plaintiffs amended after the Court

identified various deficiencies.   Therefore, the Court recommends that plaintiffs be awarded

costs in the amount of $498.33.

### F.    Post-Judgment Interest

Plaintiffs further request an award of post-judgment interest.   See Pl. Mem. at 17.

They rely on 28 U.S.C. § 1961, which states that "[i]nterest shall be allowed on any money

judgment in a civil case recovered in a district court."   28 U.S.C. § 1961(a).   Under the

statute, an award of post-judgment interest is mandatory in any civil case where money

damages are recovered.   See 28 U.S.C. § 1961(a) (stating that "[i]nterest *shall* be allowed")

(emphasis added); see also Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir.1996) ("The award of

post-judgment interest is mandatory on awards in civil cases as of the date judgment is

entered.").   "Such interest shall be calculated from the date of entry of the judgment, at a rate

equal to the weekly average 1–year constant maturity Treasury yield, as published by the

Board of Governors of the Federal Reserve System, for the calendar week preceding the date

of the judgment."   28 U.S.C. § 1961(a).   Interest is to be "computed daily to the date of

payment."   Id. § 1961(b).

Accordingly, the Court recommends that plaintiffs be awarded post-judgment interest

on their monetary award, to be calculated by the Clerk of the Court pursuant to 28 U.S.C.

§ 1961.

## CONCLUSION

For the foregoing reasons, this Court recommends that default judgment be entered against All Flooring Solutions, LLC and that plaintiffs be awarded $443,082.42, plus interest at a daily rate of $105.50 from April 27, 2016 until the entry of judgment, in the following amounts: (1) unpaid contributions and dues in the amount of $427,706.58, (2) statutory damages in the amount of $141.16; (3) audit fees of $3,200; (4) $11,536.35 in attorney's fees and $498.33 in costs; and (5) post-judgment interest to be calculated by the Clerk of Court.

Any objections to the recommendations contained herein must be filed with Judge Vitaliano on or before March 2, 2020.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

The Clerk is requested to enter this Report and Recommendation into the ECF system and to transmit copies via Federal Express to All Flooring Solutions, LLC at the following addresses: All Flooring Solutions LLC, 67 Rome Street, Farmingdale, NY 11735, and All Flooring Solutions LLC, 507 Devon Place, West Islip, NY 11795.

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**February 12, 2020**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**